**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.C.-1, K.F., and E.F.**

**No. 18-1102** (Kanawha County 17-JA-376, 17-JA-377, and 17-JA-378)

**MEMORANDUM DECISION**

Petitioner Mother B.C.-2, by counsel Sandra Bullman, appeals the Circuit Court of Kanawha County's November 13, 2018, order terminating her parental rights to B.C.-1, K.F., and E.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Matthew Smith, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 12, 2017, the DHHR filed an abuse and neglect petition alleging that petitioner was involved in a dispute about drugs during which gunshots were fired at petitioner's vehicle while B.C.-1 was inside. During the investigation, a Child Protective Services ("CPS") worker interviewed B.C.-1 regarding the shooting. The child explained that he was afraid that if he had not ducked his head in the car, he would have been shot. The child also disclosed that petitioner smoked marijuana. The CPS worker interviewed petitioner, who disclosed that she did not have a place to live and gave her account of the shooting incident. She also admitted that she previously lost custody of her children K.F. and E.F. during family court proceedings. She explained that the family court ordered her to submit to three drug screens and she did not do so.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, they will be referred to as B.C.-1 and B.C.-2, respectively, throughout this memorandum decision.

1

Petitioner waived her right to a preliminary hearing. The circuit court granted her motion for supervised visitation, parenting, adult life skills classes, and random drug screens.

In December of 2017, petitioner submitted to a psychological evaluation. The evaluator reported that petitioner admitted to previously losing custody of K.F. and E.F. in family court after not drug screening as ordered. The evaluator further reported that, during the clinical interview, petitioner focused on correcting details in the petition and denied having any role in the abuse and neglect. The evaluator stated, "[petitioner] feels as if all she had done was stop at the store to get her son some donuts, and because of the actions of the men, she has been accused of neglecting her son and failure to protect him." The evaluator also stated that, although petitioner admitted to self-medicating with marijuana, she did not believe she had a substance abuse problem.

On February 20, 2018, the circuit court held an adjudicatory hearing, and petitioner stipulated to the allegations of abuse and neglect. She was granted a post-adjudicatory improvement period. At a review hearing in March of 2018, the DHHR reported that petitioner was complying with the terms and conditions of her improvement period and recommended that the improvement period continue. In April of 2018, petitioner tested positive for methamphetamine, amphetamine, and THC on three drug screens. However, in May of 2018, she produced a negative screen. The DHHR reported that between December of 2016 and May of 2018, petitioner only attended four outpatient counseling sessions, despite the recommendation that she attend sessions every two to three weeks. On May 24, 2018, the circuit court held a review hearing regarding petitioner's post-adjudicatory improvement period, and the DHHR reported that petitioner was not complying with the terms and conditions of her improvement period due to multiple positive drug screens. However, the DHHR recommended that the improvement period continue. In July of 2018, the DHHR informed the circuit court that petitioner had been "sporadic with her services, employment, and her drug screens." The DHHR also reported that "no substantial progress was being made" and that up until the beginning of July of 2018, petitioner failed to regularly attend counseling sessions. By July of 2018, petitioner still did not have her own home and moved "from place to place." The circuit court granted the DHHR's motion to set the case for disposition.

On October 31, 2018, the circuit court held the dispositional hearing. Petitioner did not attend, but she was represented by counsel. The circuit court took judicial notice of prior evidence and found that petitioner failed to fully comply with services during the proceedings. The circuit court noted that petitioner tested positive for illegal substances throughout the proceedings and that she failed to obtain a residence or employment. The circuit court specifically found in its dispositional order that petitioner "lacks the motivation to parent" and failed to make "sufficient efforts to rectify the circumstances that led to the filing of [the p]etition." Ultimately, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was in the children's best interests. The circuit court terminated petitioner's parental rights in its November 13, 2018, dispositional order.[2] It is from this order that petitioner appeals.

---

[2]B.C.-1's father's parental rights were also terminated. According to respondents, the permanency plan for B.C. is adoption in his kinship placement. The father of K.F. and E.F. is a nonabusing parent. Those children will remain in their father's custody.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. In support, petitioner asserts that she substantially complied with her post-adjudicatory improvement period. She contends that she participated in counseling and had negative drug screens for a period of time. However, she admits that she relapsed on substances in April of 2018, and that she failed to take multiple drug screens in September and October of 2018.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[ren].

Contrary to her argument on appeal, petitioner failed to substantially comply with the terms and conditions of her improvement period. The record shows that petitioner tested positive for illegal substances during the proceedings and refused to drug screen for periods of time. The record also shows that petitioner did not participate in counseling as often as recommended and was "sporadic" in her participation in other services. Petitioner also failed to obtain housing or employment during the proceedings. The circuit court found that petitioner "lacks the motivation to parent" and failed to make "sufficient efforts to rectify the circumstances that led to the filing of [the p]etition." Based on this evidence, it is clear that there was no reasonable likelihood that

petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was in the children's best interests.

While petitioner argues that the circuit court should have granted her a less-restrictive dispositional alternative, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). While petitioner also argues that legal guardianship with a family member would allow for permanency for B.C.-1 and would not require the termination of her parental rights, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). The child was placed in an adoptive home and the termination of petitioner's parental rights was necessary to establish permanency for the child. Therefore, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 13, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison